HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROMAN BRUTSKY and LYUBOV BRUTSKY,

        Plaintiffs,

v.

CAPITAL ONE, N.A.,

        Defendant.

CASE NO. C17-0491 RAJ

ORDER

## I. INTRODUCTION

This matter comes before the Court on Defendant's Motion to Dismiss Plaintiffs' Complaint. Dkt. # 11. Plaintiffs Roman Brutsky and Lyubov Brutsky oppose the Motion. Dkt. # 17. For the reasons set forth below, the Court **GRANTS** Defendant's Motion.

## II. BACKGROUND

The following is taken from Plaintiff's Complaint, which is assumed to be true for the purposes of this motion to dismiss. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

Plaintiffs bring this action against Defendant Capital One, N.A. for alleged violations of the Real Estate Civil Settlement Procedure Act, 12 U.S.C. § 2605 ("RESPA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(2)(A) ("FDCPA"), the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2 *et seq.* ("FCRA"), the Washington Consumer Protection Act ("CPA"), the Washington Mortgage Loan Servicing Act ("MLSA"), and for breach of contract. Dkt. # 1 ¶¶ 1, 47.

Defendant is a national banking association that offers mortgages in the state of Washington. Dkt. # 1 ¶ 5. Plaintiffs own two adjacent lots of real property located in King County, Washington. *Id.* ¶ 6. On or about October 25, 2007, Plaintiffs obtained an "interest only" mortgage loan from ING Bank, FSB to refinance their home. The mortgage was secured by the two lots of real property. *Id.* ¶¶ 7, 11. Plaintiffs' home was located on one of the lots. Plaintiffs subdivided the empty lot and constructed a house which was then used as rental property. *Id.* ¶ 11. Plaintiffs fell behind on their mortgage payments and in or around May 2012, Defendant acquired Plaintiffs' loan. *Id.* ¶¶ 8, 9; Dkt. # 11. On or about November 8, 2012, Plaintiffs obtained a loan modification from Defendant. *Id.* ¶ 10.

In 2016, Plaintiffs paid their mortgage payments in a timely manner. *Id.* ¶ 13. In March 2016, Defendant paid the property taxes due on one property securing the mortgage. During the same month, Plaintiffs also paid the property taxes due on that property. *Id.* ¶¶ 15, 16. That same year, Plaintiffs decided to sell their rental home. On or about June 27, 2016, Plaintiffs received a written offer to purchase their rental property. *Id.* ¶ 17. The amount of the offer was not enough to pay off the mortgage, so Plaintiffs applied for a new mortgage, secured by their residence, to pay off the original mortgage. *Id.* ¶ 18. Plaintiffs' application for a new mortgage was denied because Defendant reported that Plaintiffs' original mortgage was delinquent. *Id.* ¶ 19. Plaintiffs allege that they communicated via phone and in writing with Defendant numerous times

throughout 2016 to inform Defendant of the issue and to request adjustments to their account. *Id*. ¶ 22.

On or about August 19, 2016, Plaintiffs sent a written request to Defendant to correct the errors in their account. Defendant did not respond to that written request. *Id*. ¶¶ 23, 24. At some point in November 2016, the buyer for the rental home withdrew the offer. *Id*. ¶ 30. On November 9, 2016, Plaintiffs sent written requests to credit reporting agencies disputing their payment history with Defendant and requesting corrections to their credit reports. *Id*. ¶ 31. In January of 2017, Plaintiffs, this time through their counsel, again contacted Defendant and requested that the payment history errors be corrected. *Id*. ¶ 37. Defendant did not respond to that letter. *Id*. ¶ 38. Plaintiffs filed this action on March 28, 2017. Dkt. # 1.

### III. LEGAL STANDARD

Defendant filed its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 8, but cites to case law setting out the legal standards for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. # 11 at 2, 3. As such, the Court will construe Defendant's Motion as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

#### A. FRCP 8

Federal Rule of Civil Procedure 8(a) states that "[a] pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. "A claim is the aggregate of operative facts which give rise to a right enforceable in the courts." *Bautista v. Los Angeles Cty*., 216 F.3d 837, 840 (9th Cir. 2000). To comply with Rule 8, Plaintiffs must plead a short and plain statement of the elements of their claims, identifying the transaction or occurrence giving rise to the claim and the elements of the prima facie case. *Id*. Accordingly, Plaintiffs must set forth "who is being sued, for what relief, and on what

theory, with enough detail to guide discovery." *McHenry v. Penne,* 84 F.3d 1172, 1179-80 (9th Cir. 1996).

### B. FRCP 12(b)(6)

Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a complaint for failure to state a claim. The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id*. at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may also consider evidence subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### IV. DISCUSSION

#### A. Standing

Defendant first argues that Plaintiffs lack standing to bring this lawsuit because they failed to allege a concrete injury that would satisfy the injury-in-fact requirement of Article III. In order to show standing, Plaintiffs must show that they have suffered an "injury in fact" that is "fairly traceable to the challenged action of the defendant," and that "will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotations, citations, and alterations omitted). Defendant argues that

Plaintiffs allege a "bare procedural violation, divorced from any concrete harm." Dkt. # 11. Defendant does not expand on that argument with any further details as to why Plaintiffs' alleged injury is not concrete.

Plaintiffs allege in their complaint that they were injured when Defendant improperly reported that they were in default of their loan. Plaintiffs further allege that this improper reporting affected their "credit worthiness" resulting in additional fees and interest, their failure to obtain a new mortgage, and the loss of the opportunity to sell their rental property. Dkt. # 1 ¶¶ 19, 46, 47. Defendant argues in its Reply that Plaintiffs' injuries are not traceable to Defendant's alleged actions because Plaintiffs' admit that they were previously in default on their mortgage, and therefore, their credit was damaged long before Defendant reported that they were in default of their loan. Dkt. # 19 at 3.

While it is possible that Plaintiffs' credit was already damaged, it is also possible that the alleged errors in Defendant's reporting were the cause of Plaintiff's failure to obtain a new mortgage. At this early stage in the proceedings, Plaintiffs are not required to show the causal connection between the alleged injuries and Defendant's actions with that degree of certainty. To meet its burden to demonstrate the casual connection element of Article III standing at the pleading stage, Plaintiffs need only to allege specific facts plausibly explaining causality. *See Barnum Timber Co. v. U.S. E.P.A.*, 633 F.3d 894, 899 (9th Cir. 2011) (citing *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1014 n. 3 (1992)). Plaintiffs need not eliminate any other contributing causes to their injuries to establish standing. *Barnum Timber Co.*, 633 F.3d at 901; *Ocean Advocates v. U.S. Army Corps of Engineers*, 402 F.3d 846, 860 (9th Cir. 2005) (finding the injury fairly traceable to the defendant, even though "other factors may also cause" the injury, because "the link between the [challenged action] and [the alleged injury] is not tenuous or abstract").

Plaintiffs' alleged injuries are sufficiently concrete to constitute an "injury in fact" and Plaintiffs have adequately alleged that these injuries are traceable to Defendant's

alleged conduct. Defendant makes no argument that Plaintiffs do not meet the requirement of redressability. Therefore, Plaintiffs have alleged facts sufficient to establish that they have Article III standing.

**B. Real Estate Settlement Procedure Act**

Plaintiffs allege that Defendant violated RESPA by failing to respond to their qualified written requests. Dkt. # 1 ¶ 42. RESPA provides an action for damages against mortgage loan servicers who fail to respond to inquiries from borrowers regarding the servicing of their loans. If the servicer fails to respond properly to such a request, the statute entitles the borrower to recover actual damages and, if there is a pattern or practice of noncompliance, statutory damages. 12 U.S.C. §§ 2605(e)(1)(A), 2605(e)(2), 2605(f). Defendant argues that Plaintiffs fail to allege facts that establish that their letters were qualified written requests that would require a response under RESPA.

A "qualified written request" is a "written correspondence" that "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrowers; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). A servicer must respond to a qualified written request if it requests or challenges "information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A), (e)(2).

In response to Defendant's Motion, Plaintiffs submitted copies of the letters that they allege were qualified written requests. Dkt. # 17 Ex. 1. As the Complaint refers to these documents and they are central to Plaintiffs' RESPA claim, the Court will consider them here. *See Marder*, 450 F.3d at 448. "[U]nder § 2605(e), a borrower's written inquiry requires a response as long as it (1) reasonably identifies the borrower's name and account, (2) either states the borrower's reasons for the belief ... that the account is in error or provides sufficient detail to the servicer regarding other information sought by

the borrower, and (3) seeks information relating to the servicing of [the] loan." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012) (internal quotations omitted).

All three letters are written correspondence that include the name and account of the borrowers. At issue is whether the letters state Plaintiffs' reasons for the belief that their account was in error or provides sufficient detail regarding the other information they sought. Two of the letters were sent by Plaintiffs to Defendant on or about August 19, 2016 and November 8, 2016, the other letter was sent by Plaintiffs' counsel to Defendant on January 5, 2017. The two letters sent in 2016 indicate a "dispute" and state that Defendant "makes false accusations about payments". They also indicate that receipts were attached to each letter. In support of their Response, Plaintiffs provide copies of their bank statements and cancelled checks but do not indicate which of these documents were sent to Defendant as attachments. Dkt. #17 Ex. 1. While "RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a qualified written request and respond accordingly," the letter must provide "sufficient detail". *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012). The August 19, 2016 and November 8, 2016 letters sent by Plaintiffs contain almost no details about what information Plaintiffs sought or Plaintiffs' reasons for believing that their account was in error. Therefore, these letters were not qualified written requests such that Defendant would be liable for failing to respond.

The letter sent to Defendant by Plaintiffs' counsel on January 5, 2017, contains significantly more detail. It identifies the alleged payment crediting errors on Plaintiffs' account, requests that Defendant correct the errors and notify credit reporting agencies of the errors, and enclosed proof of payments as attachments. Dkt. # 17 Ex. 1. This letter meets the requirements of 12 U.S.C. § 2605(e)(1)(B) and is a qualified written request. However, Plaintiffs fail to allege facts sufficient to show that they suffered any actual damages from the alleged RESPA violation.

Plaintiffs allege that Defendant's failure to respond caused "confusion, anxiety, and stress" and "prolonged the period of time [Plaintiffs] were in default". Dkt. # 1 ¶¶ 43, 44. Plaintiffs argue that this prevented them from refinancing the remainder of the mortgage on their rental home and cost them the sale of their rental property. Defendant is only liable for damages resulting from a failure to respond to a qualified written request. As stated above, the only letter that can be considered a qualified written request, is the January 5, 2017 letter. Plaintiffs' application for a new mortgage was rejected in 2016, and the offer to purchase Plaintiffs' rental property was withdrawn in November of 2016. Both occurred prior to Defendant's alleged failure to respond to Plaintiffs' January 5, 2017, qualified written request. Plaintiffs allege no further facts showing that they suffered actual damages as a result of the alleged violation.

Under 12 U.S.C. § 2605(f)(1), a servicer can be liable to the borrower for statutory damages where there is a "pattern or practice of noncompliance". However, allegations showing that Defendant failed to respond to one qualified written request is not sufficient to establish a pattern or practice of noncompliance such that statutory damages would be appropriate. *Congdon v. Wells Fargo Bank, N.A.*, No. C16-1629RSL, 2017 WL 661733, at *5 (W.D. Wash. Feb. 17, 2017). As Plaintiffs fail to adequately plead actual or statutory damages resulting from Defendant's alleged violation, Defendant's motion to dismiss Plaintiffs' RESPA claim is **GRANTED.**

**C. Fair Debt Collection Practices Act**

Section 1692e of the FDCPA prohibits debt collectors from using "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e(2)(A), prohibits the "false representation of the character, amount, or legal status of any debt." *Id.* Under the FDCPA, the term "debt collector" includes: "(1) any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts;

(2) any person who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another"; and (3) any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1208 (9th Cir. 2013); 15 U.S.C. § 1692a(6). Section 1692a(6)(f) excludes several categories of entities from the definition of "debt collector".

Defendant must be a "debt collector" as defined by the statute to be liable under section 1692e of the FDCPA. Plaintiffs argue that Defendant meets the definition of a "debt collector" because they assert that Defendant is in the principal business of collecting debts, and because it is an "entity collecting on a defaulted debt acquired from another". Dkt. # 17 at 8. Plaintiffs' sole argument in support of its assertion that Defendant is in the principal business of collecting debts is that, Defendant is a bank and that all banks are in the principal business of collective debts. Plaintiffs do not make any allegations supporting their assertion that the principal purpose of Defendant's business is debt collection. Dkt. # 1 ¶¶ 45-48. Plaintiffs' Complaint and Response fail to provide any factual basis from which to plausibly infer that the principal purpose of Defendant's business is debt collection. *See Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1209 (9th Cir. 2013).

Plaintiffs' argument that Defendant is a "debt collector" because they "regularly collect or attempt to collect . . . debts owed or due . . . another" also fails. 15 U.S.C. § 1692a(6). The Supreme Court recently held that "a company may collect debts that it purchased for its own account without triggering the statutory definition" in section 1692e of the FDCPA. *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1719, 198 L. Ed. 2d 177 (2017); *see also Schlegel*, 720 F.3d at 1209 (9th Cir. 2013) ("The statute is not susceptible to the [plaintiffs'] interpretation that 'owed or due another' means 'originally owed or due another.'"). By Plaintiffs' own admission, Defendant acquired Plaintiffs' debt while they were in default. Dkt. # 1 ¶ 9. Defendant is not an

entity collecting a debt on behalf of another, but is attempting to collect a debt that it now owns for its own account.  Even when viewed in the light most favorable to Plaintiffs, the Complaint fails to plausibly allege that Defendant is a "debt collector" under the FDCPA.  Therefore, Defendant's motion to dismiss Plaintiffs' FDCPA claim is **GRANTED.**

### D.  Fair Credit Reporting Act

Plaintiffs allege that Defendant received notices of a dispute from credit reporting agencies ("CRA") but failed to correct errors in prior credit reports in violation of 15 U.S.C. § 1681s-2(b)(1) within the deadline required under 15 U.S.C. § 1681s-2(b)(2).

The FCRA requires that a source that provided credit information to credit reporting agencies, or "furnishers", upon receiving a notice that a consumer disputes that information:

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the [CRA] pursuant to section 1681i(a)(2) ...;
> (C) report the results of the investigation to the [CRA];
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other [CRAs] to which the person furnished the information ...; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1) ... (i) modify ... (ii) delete[or] (iii) permanently block the reporting of that item of information [to the CRAs].

15 U.S.C. § 1681s–2(b)(1).  These duties arise only after the furnisher receives a notice of dispute from a credit reporting agency.  *Id*; *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009).

Defendant argues that Plaintiffs fail to state an FCRA claim because they failed to make a prima facie showing of inaccurate credit reporting.  In support of this argument, Defendant cites to *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) to support the contention that the "threshold inquiry under 15 U.S.C. § 1681s-2(b) is whether the furnisher provided a credit reporting agency with factually inaccurate

information." Dkt. # 11 at 16.  The Court disagrees with Defendant's interpretation of the holding in *Carvalho*.  The Ninth Circuit held that courts have imposed a requirement that an actual inaccuracy exist for plaintiff to state a claim for under the FCRA's reinvestigation provision, 15 U.S.C. § 1681i, and that this interpretation is persuasive for consideration of a similar California state statute.  At this stage in the proceedings, Plaintiffs need only plausibly allege that Defendant violated 15 U.S.C. § 1681s–2(b)(1) not, as Defendant suggests, show with specificity that Defendant reported factually inaccurate information.

Plaintiffs further argue that Defendant failed to conduct a "reasonable" investigation and because of that failure, did not find and correct the errors to their prior credit reports.  Dkt. # 1 ¶ 67; Dkt. # 17 at 10.   The allegations in the Complaint support Plaintiffs' contention that the information provided by Defendant to credit reporting agencies was inaccurate, that Plaintiffs mailed notices of dispute to credit reporting agencies, and that Defendant received notices of a dispute from those credit reporting agencies.  At issue is whether the ensuing investigation was "reasonable", and whether Defendant failed to correct the allegedly inaccurate or incomplete information. "Furnishers" are required to conduct a "reasonable, non-cursory investigation" after receiving an inquiry by a credit reporting agency.  *Gorman*, 584 F.3d at 1157.  "The pertinent question is thus whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." *Id.*  Plaintiffs make no allegations about the contents of the credit reporting agencies' notices of dispute or how Defendant received notice.  Plaintiffs also make no allegations about the adequacy of Defendant's investigation.  Plaintiffs' argument in their Response that a "reasonable investigation would have found" the errors is not persuasive and not sufficient to state a claim under the FCRA.  Defendant's motion to dismiss Plaintiffs' FCRA claim is **GRANTED.**

### E. Washington Consumer Protection Act

To prevail on a Washington Consumer Protection Act ("CPA") claim, Plaintiffs "must show (1) an unfair or deceptive act or practice, (2) that occurs in trade or commerce, (3) a public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act and the injury suffered." *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wash. 2d 59, 73, 170 P.3d 10, 17 (2007). Plaintiffs must satisfy all five elements to prevail on a CPA claim. *Id.*

Defendant's sole argument for dismissal of Plaintiffs' CPA claim is that they failed to allege any facts to support the element of public interest impact. Plaintiffs argue that because the alleged unfair acts involve mortgage servicing and Defendant is involved in "an enormous number of mortgages in the country" and Washington state, the public interest element is presumptively met. In support of this assertion, Plaintiffs cite to two cases: *Bain v. Metro. Mortg. Grp., Inc.*, 285 P.3d 34 (2012) and *McDonald v. Onewest Bank*, 929 F. Supp. 2d 1079 (W.D. Wash. 2013). In *McDonald*, the court found that the public interest element was satisfied because the defendant played a substantial role in the mortgage industry in Washington State and because the business practices that gave rise to the litigation affected the general borrowing public. *McDonald*, 929 F. Supp. 2d at 1097.

Similarly in *Bain*, the Washington Supreme Court was asked to resolve three certified questions relating to the role and effect of the Mortgage Electronic Registration System Inc. ("MERS") on home foreclosures pending in King County, Washington. The court found that the "unfair or deceptive" language used in certain contract documents would have a broad impact because MERS was "involved with an enormous number of mortgages in the country." *Bain*, 285 P.3d at 50. In both cases, the public interest element was not satisfied merely because the defendant was involved in a large number of mortgages, but because unfair or deceptive actions at issue were not unique to the

plaintiff. Here, Plaintiffs merely state that Defendant's actions "affect the public interest" but do not allege any facts to support that statement. Plaintiffs do not allege how Defendant's actions impact the public interest or affect the general borrowing public, and fail to establish that Defendant's actions are not unique to its interaction with Plaintiffs. As Plaintiffs fail to establish the public interest element of a CPA claim, Defendant's motion to dismiss this claim is **GRANTED.**

### F. Breach of Contract

Plaintiffs allege that Defendant breached a contract by knowingly and willfully misapplying Plaintiffs' loan payments to an escrow account for taxes instead of to interest and principle. Plaintiffs allege that this was in violation of the express terms of the mortgage loan contract between the parties. However, Plaintiffs fail to indicate what contract term was allegedly breached, how it was breached, or why Defendant's application of Plaintiffs' loan payment for property taxes was a breach of that contract. A breach of contract claim must point to a provision of the contract that was breached. *See, e.g., Elliot Bay Seafoods, Inc. v. Port of Seattle*, 124 Wash.App. 5, 98 P.3d 491 (2004); *BP W. Coast Prod., LLC v. Shalabi, No*. C11-1341MJP, 2012 WL 441155, at *4 (W.D. Wash. Feb. 10, 2012). Plaintiffs fail to do so in their Complaint. Defendant's motion to dismiss Plaintiffs' breach of contract claim is **GRANTED.**

### G. Mortgage Loan Servicing Act

The Mortgage Loan Servicing Act ("MLSA") requires lending institutions to notify borrowers when the servicing for a loan is sold, transferred or assigned. RCW 19.148.101 *et seq.* Plaintiffs allege that Defendant's failure to inform them of changes made to their servicing requirements, including the interest rate, monthly payment amounts, and escrow balance, violated RCW 19.148.030. Plaintiffs further allege that Defendant failed to respond within fifteen (15) business days after receiving a written request for information about the Plaintiffs' balance. Plaintiffs obtained a loan modification from Defendant in November of 2012. MLSA penalizes a lending

institution's failure to inform mortgagor of changes made regarding servicing requirements only in the event that "servicing of a loan is sold, assigned, transferred, or otherwise acquired by another person." RCW 19.148.030(2)(a)(iii). Plaintiffs obtained a loan modification directly from Defendant after Defendant began servicing their loan. Dkt. ## 9,10; Dkt. # 11 at 9; Dkt. # 17 at 8. Plaintiffs do not allege that Defendant failed to inform them of service requirement changes when Defendant acquired Plaintiffs' loan, or that there were any changes after Plaintiffs obtained a loan modification. Confusingly, Plaintiffs argue in their Response that "[i]f defendant is claiming that in March 2016, the monthly payment amount or escrow balance changed, then it must inform [Plaintiffs] of the change. Defendant failed to provide notice." Dkt. #17. Defendant does not make that claim, and even if Plaintiffs alleged that Defendant made changes to their servicing requirements in March of 2016, Defendant was not a new loan servicer such that MLSA would be applicable. Defendant's motion to dismiss Plaintiffs' MLSA claim is **GRANTED.**

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss. Dkt. # 11. Plaintiffs are given leave to amend their FCRA and breach of contract claims within twenty (20) days of the date of this order. If Plaintiff fails to timely comply with this Order by filing an amended complaint that states a valid claim for relief, the Court will dismiss this action without leave to amend.

Dated this 23rd day of January, 2018.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge